IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-57-KS

| | |
|---|---|
| MICHAEL LUKE BRYAN, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff Michael Luke Bryan filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for disability insurance benefits and supplemental security income. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. On February 19, 2015, the court held oral argument in the matter. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties and considered the arguments of counsel. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

## STATEMENT OF THE CASE

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on October 14, 2010, alleging disability beginning January 1, 2007. (Tr. 197.) The applications were denied initially and upon reconsideration (Tr. 86-87, 98-99), and a request

for hearing was filed on June 28, 2011 (Tr. 138). On August 2, 2012, a hearing was held before Administrative Law Judge Regina L. Warren ("ALJ"), who issued an unfavorable ruling on September 20, 2012. (Tr. 24.) Plaintiff's request for review by the Appeals Council was denied February 6, 2014, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision.

## DISCUSSION

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in

2

substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

Plaintiff raises five issues on appeal. First, Plaintiff contends that the ALJ failed to consider a disability determination made by the North Carolina Department of Health and Human Services, Division of Vocational Rehabilitation Services ("Vocational Rehabilitation"). (Pl.'s Mem. Supp. Mot. J. Pleadings [DE #10] at 10-13.) Second, Plaintiff argues that the ALJ failed to properly consider the Listings. (*Id*. at 14-17.) Third, Plaintiff asserts that the ALJ did not properly evaluate the credibility of Plaintiff's statements concerning the intensity and persistence of pain. (*Id*. at 17-20.) Fourth, Plaintiff maintains that the Commissioner did not meet her burden of showing the existence of jobs in significant numbers in the national economy that Plaintiff can perform. (*Id*. at 20-22.) Fifth, Plaintiff argues that the ALJ improperly attempted to negotiate or settle Plaintiff's claims for social security benefits. (*Id.* at 23.)

I.      **Vocational Rehabilitation Determination**

In late 2011 or early 2012, Plaintiff was referred by Vocational Rehabilitation for a situational vocational assessment at Coastal Enterprises, Inc. ("Coastal"). In February 2012, Plaintiff spent two weeks at Coastal in a sheltered workshop where he rolled anti-static filaments.

(Tr. 295.) Plaintiff's work habits were noted to be "excellent" and his supervisors reported strengths in all categories, including attitude, cooperation, initiative, punctuality and concentration. (*Id.*) However, Mary B. Rea-Poteat, Ed.D., a vocational evaluator at Coastal, ultimately reported:

> According to the work behavior observations and diagnostic/referral information, this evaluator thinks Luke Bryan is very limited in obtaining and maintaining competitive employment. His degenerative disk disease and facet arthritis prevent him from standing one to two hours at the time, without pain. His walking is limited as well. Moreover, his sitting is restrictive: fifteen minutes at a time without pain. He is able to manage light chores at home by pacing himself during the day and staying in a horizontal position to take pressure off his spine. With these limitations, he could explore working at home such as phone surveyor/solicitor or account collector or light hands-on jobs like sorting/stuffing envelopes. Other part-time jobs with training may be possible.

(Tr. 296.) Thereafter, Vocational Rehabilitation issued an Outcome Decision dated March 9, 2012, discontinuing Plaintiff's vocational rehabilitation services because it had been determined "[u]pon review of [Plaintiff's] evaluation for stamina and work tolerance" that his "impediments to employment are too severe for employment." (Tr. 298.)

Plaintiff argues that Vocational Rehabilitation's Outcome Decision is a disability determination by another government agency and that the ALJ committed reversible error by failing to consider the agency's decision. The court rejects Defendant's argument that it is unclear what "impediments to employment" were considered by Vocational Rehabilitation, as the Outcome Decision clearly states that it is based "[u]pon review of [Plaintiff's] evaluation for stamina and work tolerance," which was conducted by Coastal.

Nevertheless, the court finds that the ALJ did not commit reversible error in her consideration of the vocational rehabilitation evidence. To the extent that Vocational Rehabilitation's Outcome Decision may be considered a finding that Plaintiff is disabled or unable to work, it concerns an issue reserved to the Commissioner. Although another agency's disability

4

determination may not be disregarded, the ALJ need not adopt it or give it special significance. SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006) ("Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies."); *see also* 20 C.F.R. § 404.1504. "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." SSR 06-03p, 2006 WL 2329939, at *7. As such, an ALJ should evaluate any opinion evidence used by another agency that is in the case record and explain the consideration given to the agency's determination. *Id.* at 6-7.

In this case, the ALJ did not specifically address Vocational Rehabilitation's Outcome Decision. However, the ALJ did consider the opinions of the vocational evaluator upon which Vocational Rehabilitation's determination was based. Noting that Dr. Rea-Poteat is not an acceptable medical source, the ALJ considered her an "other source whose information may help understand how [Plaintiff's] impairments affect his ability to work." (Tr. 32.) Ultimately, the ALJ gave Dr. Rea-Poteat's opinions little weight, explaining:

> [Dr. Rea-Poteat's] opinions are inconsistent with the relatively normal objective findings of the consultative examiners, who documented that the claimant exhibited generally normal range of motion and strength of the joints and extremities and ambulated with a normal gait. Additionally, in her treatment notes, Ms. Dills [Plaintiff's treating family nurse practitioner] generally did not document any abnormalities of [Plaintiff's] spine, gait or extremities. Imaging studies of [Plaintiff's] spine show no acute abnormalities. These relatively normal objective findings suggest that [Plaintiff] retains the ability to perform a reduced range of light work. Although Dr. Rea-Poteat noted [Plaintiff] grimaced, constantly stretched, took extended breaks of 30 minutes to lie in his truck, and was able to work for only 2.5 hours every other day, these observations are inconsistent with the relatively mild objective/clinical abnormalities of record. As noted previously, [Plaintiff] has received only sporadic and conservative treatment of his back pain with pain medication, and Ms. Dills documented no abnormalities of

5

> [Plaintiff's] spine in her April 2012 treatment notes. Accordingly, to the extent that Dr. [Rea-Poteat] and Ms. Dills have opined that [Plaintiff] is unable to perform the above residual functional capacity assessment, those opinions have been given little weight as they are not supported by the relatively benign physical examinations and conservative treatment of the claimant's pain symptoms.

(Tr. 33.)

Although the undersigned may have placed greater weight upon Dr. Rea-Poteat's opinions and Vocational Rehabilitation's determination than the ALJ did, it is not the role of this court to reweigh the evidence, make credibility determinations or substitute its judgment for that of the ALJ. *Mastro*, 270 F.3d at 176. Rather, the scope of this court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *Coffman*, 829 F.2d at 517. In this case, there is substantial evidence to support the ALJ's findings with respect to Dr. Rea-Poteat's opinions. Furthermore, Dr. Rea-Poteat's opinions were the basis for Vocational Rehabilitation's Outcome Decision. Although the ALJ failed to explicitly state the weight given the vocational decision, any error in this regard was harmless in light of the ALJ's explanation of her evaluation of Dr. Rea-Poteat's opinions. *See Garner v. Astrue*, 436 Fed. App'x 224, 226 n.1 (4th Cir. 2011) (ALJ's failure to list impairments at step two found harmless where remainder of decision made clear what impairments were found by ALJ).

**II.      Listings**

Next, Plaintiff contends that the ALJ erred in determining that Plaintiff's impairments failed to meet or medically equal any of the Listings set forth in 20 C.F.R. Part 404, Subpart P, App'x 1. The burden of proof at step three is on the claimant to show that he meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An

6

impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. § 404.1525(e)(5). To establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for that listing. *Zebley*, 493 U.S. at 531. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3 (Jul. 2, 1996). In determining whether a listing is met or equaled, the ALJ must "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding. 20 C.F.R. §§ 404.1526(c), 416.926(c).

In this case, the ALJ considered evidence of Plaintiff's spinal disorder pursuant to Listing 1.04, his osteoarthritis pursuant to Listing 1.02 and his gout pursuant to Listing 14.09. (Tr. 28.) She further considered the combined effects of Plaintiff's impairments, both severe and non-severe, on Plaintiff's ability to work. (Tr. 28.) With regard to Plaintiff's back disorder, the ALJ found that "MRI examinations fail to reveal any significant herniations, stenosis or nerve root impingement. Accordingly, [Plaintiff's] degenerative disc disease does not meet or medically equal Listing 1.04." (Tr. 27-28.) The ALJ also found that the evidence did not support a finding that Plaintiff's osteoarthritis met or medically equaled Listing 1.02, as there was no indication that Plaintiff was unable to ambulate effectively. Substantial evidence supports these findings.

When addressing Plaintiff's gout, the ALJ misstated the requirements of Listing 14.09A, stating that it required joint inflammation or deformity in *two or more major joints* resulting in the inability to ambulate effectively or the inability to perform fine and gross movements effectively. In actuality, Listing 14.09A requires persistent inflammation or deformity of (1) one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively; or (2) one

7

or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. 20 C.F.R. Part 404, Subpt. P, App'x 1 (Jan. 2, 2015).

Notwithstanding the ALJ's misstatement, Plaintiff has not shown reversible error. An x-ray of Plaintiff's foot in August 2012 demonstrated "erosion of the first metatarsal head likely a consequence of gout." (Tr. 406.) However, the first metatarsal head is not a major peripheral weight-bearing joint under the listing. *See* 20 C.F.R. Part 404, Subpt. P, App'x 1 §§ 1.00F, 14.00C8. Because the evidence does not support a finding of persistent inflammation or deformity of a major peripheral weight-bearing joint or a major peripheral joint in each upper extremity, the ALJ's error in misstating the requirements of Listing 14.09A was harmless.

Having determined that Plaintiff's impairments did not meet or medically equal Listings 1.04, 1.02 and 14.09, the ALJ further considered the combination of all of Plaintiff's impairments and determined that they do not meet or medically equal any of the listings. Substantial evidence supports the ALJ's findings.

## III. Plaintiff's Credibility

Plaintiff next claims that the ALJ improperly evaluated his credibility and pain. A review of the administrative decision in this case reveals that the ALJ applied the correct legal standard, engaging in the two-step analysis for determining Plaintiff's credibility. The court rejects Plaintiff's argument that the ALJ improperly required objective evidence to support Plaintiff's complaints of pain. Pain is subjective and cannot always be confirmed by objective evidence. Thus, a claim of disabling pain may not be rejected "*solely* because the available objective evidence does not substantiate [the claimant's] statements" as to the severity and persistence of his pain. 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2) (emphasis added).

> This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a

claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Craig*, 76 F.3d 595.

Plaintiff has not shown that the ALJ improperly evaluated his credibility. Accordingly, the court overrules this assignment of error.

## IV. Vocational Expert's Testimony

Plaintiff further challenges the ALJ's reliance on the vocational expert's testimony in determining whether there are jobs that exist in the national economy that Plaintiff can perform. Noting that the Dictionary of Occupational Titles does not address a sit/stand option, Plaintiff argues that the vocational expert failed to explain the basis for her testimony regarding the availability of a sit/stand option for the positions identified, and therefore the ALJ erred in relying upon the vocational expert's testimony. *See* SSR 00-4p (requiring ALJ to resolve any apparent conflict between a vocational expert's testimony and the Dictionary of Occupational Titles). Contrary to Plaintiff's argument, there is no unresolved conflict or inconsistency in this case between the vocational expert's testimony and the Dictionary of Occupational Titles. As to each of the three jobs identified (stock checker, work ticket distributor and returned goods sorter), the vocational expert testified that the employer provides a table or a desk that is waist high, as well as a chair for the individual, and that because of the way the jobs are performed the individual would have the opportunity to change positions throughout the day. (Tr. 67-68.) Thus, the vocational expert sufficiently explained the basis for her testimony.

To the extent Plaintiff is challenging the basis for the ALJ's hypothetical or the weight given the evidence presented, Plaintiff is essentially asking the court to substitute its judgment for the ALJ's. This the court may not do. Accordingly, the court rejects Plaintiff's challenge to the vocational expert's testimony.

## V.     Negotiation of Benefits

Finally, Plaintiff asserts that he was deprived of a full, fair and open hearing because the ALJ attempted to negotiate benefits, suggesting that she would issue a favorable SSI decision if Plaintiff elected to amend his disability onset date to his fiftieth birthday. At Plaintiff's administrative hearing, the ALJ acknowledged that the grids would dictate a finding of disabled at age fifty if Plaintiff were found capable of only sedentary work. (Tr. 70.) However, there is no evidence that the ALJ indicated she would issue a favorable SSI decision if Plaintiff waived his right to Title II benefits or that she retaliated against Plaintiff for not doing so, as Plaintiff suggests. The court therefore finds this argument to be without merit.

## **CONCLUSION**

The court finds that the Commissioner's decision in this case is supported by substantial evidence in the record and was reached upon application of the correct legal standards. The court, therefore, DENIES Plaintiff's Motion for Judgment on the Pleadings [DE #13], GRANTS Defendant's Motion for Judgment on the Pleadings [DE #21] and AFFIRMS the Commissioner's decision.

This 30th day of March 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge